So it's Ms. McCampbell-Parris, is that right? Yes, Your Honor. Okay, you have 10 minutes, but you reserve three minutes for rebuttal. Yes, correct. You may proceed. Erin McCampbell-Parris, on behalf of Appellant Daniel Carter, may it please the Court. In denying all relief to Mr. Carter, who has already served 83% of his time, the lower court abused his discretion in several critical ways. First, in evaluating the proof that Mr. Carter put forth of the extraordinary and compelling factors that warranted reconsideration of his sentence under compassionate release, the lower court used what this Court in United States v. Brooker has called applying rules of constraint rather than rules of discretion. The lower court looked at the factors that were presented, for example, the fact that the mandatory minimums had changed from 20 to 15 years, and in essence, without using the same words as the judge in Brooker, which was cannot ever qualify, made a ruling as such. It can't qualify because the sentence was still within the guidelines. When we look at the other factors, for example, Mr. Carter's family circumstances wherein his daughter overdosed of an opioid addiction, which left his two grandchildren with an unstable home, which would be akin to the factors that are discussed in application note one to guideline 1.113B1, which is that a defendant's actual children lose their caregiver, that again was simply just dismissed as something that cannot qualify. Are these children without caregivers? As I understand it, kind of being bounced around the system, unfortunately, his daughter with her opioid addiction was their best option at that time. Best option. I'm asking if they have, are they without caregivers? My understanding is that they were gonna be either in foster care or there was some sort of efforts to try to track down the father's family, but that the father's family was not suitable. And Mr. Carter's common law wife, who submitted an affidavit, is unable to take them in because she's not actually a blood relative of theirs. So them being able to join him and her in their home is hinged upon him being released, which is why I would say this factor is one that could have been and should have been considered as an exceptional circumstance. But, I mean, the judge was aware of these things. The judge, I mean, it was all presented. I mean, it seems to me you're really saying that the judge reached the wrong conclusion, right? No, I look at this opinion, and in particular, the evaluation of the extraordinary and compelling circumstances as being akin to what happened in Brooker. In Brooker, the defendant said to the judge, in essence, my sentence is too long. And the judge said that cannot qualify as an extraordinary and compelling circumstance. And this court said that treating the circumstance that way, looking at it with that lens, was the court exercising constraint rather than discretion. But he didn't say it here. He didn't say it here, exactly. He said it is not. I mean, that doesn't mean, Brooker doesn't mean that just because something can't ever categorically be an extraordinary circumstance, that every time you mention it, it is an extraordinary circumstance, right? No. So I look here that there were several circumstances, whether on their own or in total, would have gotten him past that initial threshold if the court had been applying a rule of discretion. And for example, if you want to look by contrast, your colleague, Judge Chin, was sitting by designation as a district judge in a case that I cited, United States v. Snipe. And in that case, he looked at very similar circumstances to what were here. And in the end, concluded that whether independently or altogether, there was enough there to move on to looking at resentencing as a matter of compassionate release. And then went on from there to very thoughtfully look at the 3553A factors. Here, it reads as if it didn't matter what was said. It didn't matter what was put before the district judge. The district judge was exercising constraint. And so- Well, I mean, maybe we should get straight to the 3553A factors, because that's an independent basis on which the court can deny a motion like this. Didn't the court expressly acknowledge the 3553A factors? And just weigh them in a way that, I mean, obviously you don't like. But it seemed to conclude that the 3553A factors were lined up against a granting of the motion. I look at what was done here as an abuse of discretion, not just simply a result that I don't agree with. When we look at the analysis on page 83 of the record, the only factors that are mentioned are the seriousness of the crime and the fact that the sentence still remains within the guidelines. Seriousness of the crime need to adequately deter this conduct, and then mitigating factors as well were considered. I did not see any mitigating factors in the analysis on page 83. It was pretty much just the- Well, with page 86, he also goes through other ones. There he- Would not afford adequate deterrence, a sentence reduction would not reflect the seriousness of the offense, or promote respect for the law, and provide just punishment for the offense. And then he talks about his participation in prison programs, his mentorship of young inmates, his concern for the well-being of others, all speak to the great strides he has made toward becoming a productive citizen. But then he says, nevertheless, as discussed above, the 3553A factors on balance weigh against the sentence reduction. So he talks about- Well, it is scattered in two distinct places, so it's hard to know what he was doing with respect to each portion of the motion. I agree that it's a more fuller analysis on page 86, but we don't have that on page 83. Regardless of that, he seems to hinge everything to the fact that the sentence remains within the guidelines, which this court has said is not something that they are required to do. You can go below the guidelines. He's allowed to consider that, isn't he? Pardon me? He's allowed to consider that. He is, and one- You seem to be suggesting because he considered it, he must have viewed it as a constraint as a broker. But I didn't see anything in the record that suggests that he thought that that meant he had no choice but to deny the motion. In his analysis of the first factor he raised, under the extraordinary and compelling circumstances, he did seem to suggest that because the sentence remained within the guidelines, there was nothing for him to do here. Separately, in the- Well, I think he said it's not terribly compelling if his guidelines are, the sentence is still within the guidelines range, that's not terribly compelling, seemed to be what he was saying. Why is that an abuse of discretion, or legally wrong? So, as a preliminary matter, Congress has decided that the sentences for these types of crimes is changing. The mandatory minimum's dropping from 20 to 15 years, which signals that there is a different view towards this crime than there was, say, 10, 15 years ago. Sure, but the guidelines are the same, right? I mean, the guidelines may not be the same, but the guidelines, his sentence still falls within the guidelines. And what the guidelines do not take into account here is this is someone who had already served 15 years by the time the pandemic came about. And then for the next several years, he served a sentence that was not just your standard time you would do, but a much more punitive, harsher sentence that he has described as akin to a 24-7 lockdown, where he was almost never let out of his cell, no programming, limited access to phones if and when they were available, and no family visits. So- The district court acknowledged that, right? Not in his analysis of the guidelines. It just seems that it's like, well, these are the guidelines, and here they are. The pandemic is not part of the guidelines. The pandemic is a different argument of a compelling circumstance. It is both, I would say, as an extraordinary circumstance, and separately under the 3553A factors. I think that pandemic time should count more than just a day per day, as you would- But the district court didn't, and you're saying that it was an abuse of discretion to not agree with you? No, what I'm saying is that I don't feel the client got fair consideration. I feel that instead of coming to a court that was looking at this to provide the broadest possible relief and to look at this with the greatest possible discretion, it was step by step an analysis designed to reach the result of denial by applying rules of constraint. And that's, in my opinion, violates Brooker. All right, seeing no questions, then you've got three minutes for resolve. Thank you. Okay, thank you. Ms. Lee. Good morning, your honors. May it please the court, my name is Tiffany Lee, and I represent the United States. The district court here properly exercised its discretion when it denied Mr. Carter's motion under the so-called compassionate release motion for a sentence reduction. The record shows that the district court took pains to consider the reasons which Mr. Carter sought as being extraordinary and compelling to warrant release. And in its decision, it stated that even assuming that Mr. Carter had met that threshold on the independent and alternative basis, which this court has recognized on this consideration of the section 3553A factors, the district court determined that based on specifically the nature and seriousness of defense, the need to promote respect for the law, the need for deterrence, that it felt that on consideration of Mr. Carter's case, in which he was convicted of a large scale cocaine distribution conspiracy, that all these factors did not warrant a reduction in his sentence. Therefore, according to this record, this court should affirm. Unless there are any further questions, the government rests on its papers. I guess Brooker was resided multiple times. I guess I'd be curious to hear you distinguish this case from that one. I can. Brooker was actually, the central question in Brooker, was the definition of as to what constitutes extraordinary and compelling reasons. Because what happened was, after the passage of the First Step Act, there's a distinction between application note one of the guidelines 1B1.13 in terms of what was listed for courts to consider as extraordinary and compelling reasons. The Brooker court noted that since the passage of the First Step Act, which opened up compassionate release motions for defendants to bring on themselves, there was no corresponding authority for district courts to consider the application note point one factors. For whether or not a reason is extraordinary and compelling. Excuse me. And so therefore, based on the First Step Act, the district court noted that since there is a gap that is not filled by the sentencing guidelines as they were, district courts should be free to consider whatever a defendant may bring as an extraordinary and compelling reason. I'm not familiar with the Brooker, the time in which it came up. But I think the point being made by Ms. McCampbell-Parris is that the facts here are similar to Brooker or the court made a similar error to what was made in Brooker. I don't think the district court was necessarily exercises discretion in a constrained manner. It just exercised its discretion in a manner which did not favor Mr. Carter. The district court followed the rules. It went through the extraordinary and compelling reasons which Mr. Carter asserted. And then it also went and looked at the section 3553A factors. There's nothing with what the district court did here that shows an abuse of discretion. So I mean, one of the challenges, I think, in this brave new world of compassionate release is that you have some judges who are, frankly, moved by the conditions of the pandemic and the time spent in near total lockdown. And others are not. And for the reviewing court, are we just to say, yeah, they're both right. It's compelling to you, but it's not compelling to you. And it's basically district court judges are unreviewable on this. Well, I believe the Sentencing Commission has assisted in terms of bringing back into bear with the recent iteration of the guidelines in terms of making application no one significant to a district court's consideration of what to consider. Which is basically everything. I mean, that's a pretty broad new application. There's still, it is broader than what it was before, but there are still categories of things to consider. But- Stick to apples and apples. So I mean, the conditions, his family circumstances are kind of unique and difficult. That's a one off. But conditions during COVID are pretty similar for defendants across penal institutions, I would think. And certainly within the same penal institution. And yet it is certainly the case that some judges will be moved and some judges will not be moved. Is that a problem? Should it be that either this is a basis or it's not a basis? I don't think it should be a problem because of the fact that you have a group of inmates who are all experiencing, you know, that we're all experiencing the COVID pandemic and the restrictions that are imposed thereof. We're all, as a society, we were all kind of suffering, you know, what risks to take, what risks not to take. And I think on an individual case by case determination, which a sentencing court does in any regards for any sentencing, you know, as part of the consideration as to whether or not it's extraordinary and compelling. I think a court can say, for example, in Mr. Carter's situation, where you were housed, you know, the facility was handling COVID well. OK, but is it a problem if certain judges are always finding this to be an extraordinary and compelling circumstance and other judges are never finding it to be an extraordinary and compelling circumstance? Is that a problem for us? Should we, do we have to weigh in at some point? If it becomes a critical mess where you are seeing something, it's hard to say because of the fact that extraordinary and compelling was always kind of defined and constrained by what the sentencing commission suggested. And sentencing is an individualized function of the district court. So, yeah, that's 3553A. It seems to me extraordinary and compelling is really different. That's the first step of the compassionate release analysis. And there, you would think that there should be some consistency as to what is or what types of things are extraordinary and compelling, and it ought to be with some consistency. I mean, 3553A, that is more like regular sentencing. It seems like we're on firmer ground. We're sort of more experienced. I mean, you're basically saying that we can rely on either, and the 3553A analysis is enough by itself, is that right? I'm saying that you can rely on a totality of, you can rely on either. In this case, 3553A is enough by itself, and this court has already said that. But in terms of any concern you have about the breadth of extraordinary and compelling, really, that should be a function of Congress or the Sentencing Commission. All right, seeing no questions, then, thank you, Miss. Thank you. You may be seated. Ms. McCampbell-Parris, you've got three minutes for rebuttal. May I? Yeah, please. So I think that you raised a pretty important issue, which is that there is a complete lack of consistency on whether the harsh, punitive conditions of incarceration during COVID should or should not be considered an extraordinary circumstance. It's something I think that the courts below and practitioners could use guidance from this court as to whether that is- Well, it's a little tricky because if you're in Fairton as opposed to Fort Dix, if you're medium as opposed to low, I mean, there are a lot of different variables. I agree. So what we have here is someone who was in his cell pretty much all day long, except he said for about 10 to 15 minutes, had no programming, no access to visits from family members for several years, no access to phone quite frequently. So I think that he had it probably on the harsher side of things. So he's a candidate to be considered. That- But would that mean every, I mean, so is that, in your view, then, everybody who's in that facility has got, they've met the first hurdle for compassionate release. That's compassionate, and that's extraordinarily compelling. I certainly don't mean to open the floodgates here, but I do think that Mr. Carter is in a very unique situation because he also has compelling family circumstances and other factors that it would be a proper ruling here in this case if you were to recognize that as something for courts to consider. But at a minimum, a ruling from this court saying that courts must consider, rather than applying a rule of, pardon me. Courts should consider a rule of discretion in looking at these applications, rather than looking for ways to close out of them and to deny them, which was what pretty much was done here. And not just in this decision, but this is the third time Mr. Carter's been before this court on sentencing matters. Do you think that there should be a volume discount? I mean, I'm not- I mean, the fact that his sentence was reduced several times. No, so those reductions came about from rulings from this court, or also from amendments, other things that he was entitled to receive. So he definitely has had a reduction over time, but it's because the law has changed. So, the second- Actually, I mean, arguably, one of his reductions, the law changed and then it changed back, so he kind of got a benefit, right? He has benefited from the changes in the law over time, yes. But, I mean, the Supreme Court eventually abrogated the basis for his first or second appeal, which got a 60-month reduction, right? Correct, yes. The second issue I just wanted to add was that you mentioned Brooker, and I do think this case is very similar to that one. It's not word for word, as that opinion was, but what we saw here was the court, in essence, applying the, you know, cannot qualify language. And so, I think that's a reason to find an abuse of discretion here. And finally, I wanted to add that with respect to the 3553A factors, this judge looked at and focused and honed in on the static factors, the factors that won't change. And so, as a result, Mr. Carter, no matter what he does, is not going to qualify for a reconsideration, even though Congress and the Commission have said that courts should consider and courts should give consideration to defendants in this situation. Well, but there are certain crimes, I mean, so the fact that somebody committed multiple murders, I mean, the fact that they're doing great rehabilitative work, or that they have family circumstances or health circumstances, I mean, you're not suggesting that they get out. No, and there are some cases, for example, one set up by my colleague, and it's for States versus Keith, where the defendant was sentenced and then four months later moved for compassionate release. I don't expect the court under those circumstances to really entertain the motion. Here, Mr. Carter has served 18.6 years, I believe as of today it's 220 months. He has just about 45 months left, so he's served approximately 83% of his sentence. He's made huge changes, he wants to show the world on the outside that he can do something better. And if the court had been open to consideration of resentencing, I think he would have had a chance potentially to be out as of now. He didn't just look at the static factors, and it wasn't just the case that the changes over time were favorable to your client. I mean, he also mentioned that your client had incurred multiple disciplinary incidents while incarcerated beginning in 2011, running through 2018, which was only four years before the motion. I mean, that's a span of seven years, and he then runs through all of these disciplinary tickets he had gotten. So this is not somebody who had a stellar record or an unblemished record in prison. So the district court clearly was looking at a dynamic record of the pluses and minuses in your client's columns over time. So it's not as though he simply disregarded changes in his life that were favorable and only looked at unfavorable aspects of his distant past. I mean, he was looking at unfavorable circumstances that Mr. Carter had created for himself, including quite recently in prison. What I would say in response is a couple of things. One, there's no rule from this court that says that a prisoner must have a perfect record in order to be considered. It's a rule, but what I'm saying is you were suggesting that the bad things were static, and the court was ignoring the good things that were dynamic. I'm just pointing out that the court was looking at it in a dynamic way, also at who Mr. Carter is in the present time, or has become over the present time, and that that's not unmitigated good. It's good and it's bad, and he weighed both. So number one, I would look at the fact that the analysis appears to be almost separated. That the 3553A analysis for the compassionate release portion of the motion occurs on page 83, and that's nothing but static factors. And then on page 86, when he's looking at it as a matter of the first step act reduction, then we see for the first time a bit of a discussion, and it's a very brief discussion about the rehabilitation and the record. And if you loop that back to earlier in the opinion, the judge pretty much was dismissive of the rehabilitation efforts because of the infractions. And the infractions were fairly minor. These weren't things that were more serious. We've seen some other cases such as violence, weapons, that type of thing. Drugs and alcohol, not a problem in a prison, right? Drugs are fine, not serious. I'm not suggesting that, but others such as- Possessing a hazardous tool, that's fine, right? Hazardous is okay. Those were the two incidents. Of the others, it was- Gambling is fine. Wrong place, wrong time. Gambling, not a problem in a prison, right? I'm sorry, you're characterizing these things as it's not violent, and okay. Hazardous tool presumably is posing the danger of violence. I mean, these are serious infractions, some of them. The more serious ones tend to be further back in the record. I think there was one that you mentioned from 2017, I just don't remember off the top of my head which one it was. But what I would say is that overall, the tenor of the opinion is that it was an application of rules of constraint, which this court has suggested that judges not do. All right, thank you both. We will reserve a decision. Thank you.